JOHN BRANCH *et al.*, Plaintiffs-Appellees, *v.* LESTER H. SEILER, Defendant-Appellant.—(JOHN P. FINN *et al.*, Defendants.)

First District (1st Division)    No. 76-442

Opinion filed November 14, 1977.

Delbert T. Been, of Yates, Goff, Gustafson & Been and Dent, Hampton & McNeela, both of Chicago, for appellant.

No brief filed for appellees.

Mr. JUSTICE McGLOON delivered the opinion of the court:

At approximately 9 p.m. on a dark, rainy evening on October 27, 1970, an accident involving three vehicles occurred at the intersection of 95th and Justine Streets in Chicago, Illinois. John Branch, the driver of one of the vehicles, and Beverly Wheeler, his passenger, sued Lester Seiler and John Finn, the drivers of the other two vehicles, for personal injuries allegedly sustained in the accident. The jury returned two verdicts: one in

favor of plaintiffs in their action against Seiler and the other against the plaintiffs in the action against Finn. In addition the jury awarded damages of $75,000 to Branch and $38,500 to Wheeler. Following the entry of judgment on these verdicts and the denial of post-trial motions, defendant Seiler appeals.

On appeal defendant contends (1) that plaintiffs' attorney so prejudiced the jury with certain questions asked defendant that the trial court erred in not granting his motion for a mistrial and (2) that plaintiffs' attorney committed prejudicial error in his examination of a medical witness and use of his medical testimony.

We affirm.

The evidence presented at trial shows that at the site of the accident 95th Street is six lanes wide, three lanes for eastbound traffic and three lanes for westbound traffic. There is a concrete median 10 to 14 feet wide between these east and west lanes and a crossover space in the median where Justine Street intersects with 95th Street.

At trial, plaintiffs Branch and Wheeler, the defendant Finn, and William Walsh, a friend of Finn traveling in a vehicle behind Finn, all testified that shortly before the accident they were traveling east on 95th Street in the lane nearest the median divider; that they first observed Seiler in the southernmost eastbound lane of 95th Street; and that from that lane Seiler cut across to their lane to make a turn onto Justine Street. Both Branch and Finn testified that when they first observed Seiler he was 150 feet in front of Branch's vehicle and that at that time Branch was going 20 miles per hour. Finn further testified that when Seiler began to cross lanes Seiler was 30 feet in front of Branch's vehicle and that when he cut into Branch's lane, Seiler was only five to 10 feet in front of Branch's vehicle. The evidence also showed there were two impacts. Although Branch was able to stop his vehicle five to six feet behind Seiler's, Finn collided with the rear of Branch's vehicle forcing it ahead into Seiler's. The undisputed testimony also showed that at the time of impact Seiler's vehicle was at a 45° angle with the eastbound lane adjacent to the median strip and that the rear end of his vehicle was protruding into that lane.

Defendant first contends that certain questions plaintiffs' attorney asked the defendant Seiler, called pursuant to section 60 of the Civil Practice Act, so prejudiced the jury that the trial court erred in not granting defendant's motion for a mistrial. Defendant first objects to two questions asked him concerning what occurred immediately after the accident. Plaintiffs' counsel first asked Seiler: "Did anyone threaten you?" After Seiler responded in the negative, defense counsel objected. The trial court sustained the objection, struck the answer, and directed the jury to disregard it. Later, plaintiffs' counsel asked Seiler: "Were you blamed by anyone at the scene of the occurrence?" Defense counsel immediately

objected and moved for a mistrial. The trial court sustained the objection and during a conference out of the hearing of the jury stated:

> "With reference to your motion for a mistrial, however, counsel, I think that no prejudice is created by it. I feel confident that the Court's ruling will cure any such potential error. Accordingly, the motion for a mistrial is denied."

Later during his examination of Seiler, plaintiffs' counsel referred to certain answers Seiler gave at a deposition and then asked Seiler: "Were you in any way mistreated at the deposition?" Defense counsel immediately objected and the trial court sustained the objection.

■■■ Where liability is sufficiently close so that a jury might have reasonably returned a verdict for either party, the trial must be conducted in a reasonable manner so that the jury will not be improperly influenced. (*Owen v. Willett Truck Leasing Corp.* (1965), 61 Ill. App. 2d 395, 209 N.E.2d 868.) However, Illinois case law indicates that misconduct by counsel may be rendered harmless error by the trial court's corrective action. (*Trippel v. Lott* (1974), 19 Ill. App. 3d 936, 312 N.E.2d 369.) As stated in *Martin v. Kralis Poultry Co.* (1973), 12 Ill. App. 3d 453, 463-64, 297 N.E.2d 610, 618:

> "* * * [T]he trial court is in the unique position of hearing all the testimony, all of the arguments, and of observing the parties, their counsel, and the effect of all of this on the jury. For this reason the sound rule exists that the question of whether conduct is or is not prejudicial rests within the sound discretion of the trial court and its decision will not be disturbed unless it is clear that the court has abused its discretion."

■■ It is our conclusion that although all of the above questions were improper, under the instant circumstances we find no abuse of discretion in the trial court's rulings finding no prejudice and denying defendant's motion for a mistrial. Defense counsel objected to each of the above three questions and the trial court sustained each objection. The witness, Seiler, responded only to the question concerning whether anyone threatened him and he answered that question in the negative. After sustaining an objection to this question, the trial court instructed the jury to disregard it. It is apparent that the trial court carefully considered both defendant's objections and his motion for a mistrial made after the question concerning whether anyone blamed Seiler at the scene of the occurrence. In discussing this motion, the trial court specifically noted that he felt no prejudice was created by the question and that his ruling would cure any potential error. The trial court further considered defendant's contentions in this regard in his post-trial motion requesting a new trial. The trial court heard all the testimony and arguments, observed the parties and their counsel, and was in a better position to judge the effect of these improper

questions than this court on appeal. Considering the fact that the trial court sustained objections to each of three improper questions and struck defendant's only answer from the record, we find no abuse of discretion in the trial court's ruling denying defendant's motion for a mistrial.

Defendant's second contention of error concerns the examination of Dr. Gleason by plaintiffs' counsel and his use of this medical testimony. Defendant points out that he is "not concerned with the substance of Dr. Gleason's testimony, but instead the manner in which it was projected into the case, namely, to suggest that he who examines must be liable." The record shows that pursuant to defendant Seiler's motion, the trial court ordered both plaintiffs to appear before Dr. Gleason to be medically examined. Defendant specifically complains of the fact that during trial plaintiffs' attorney repeatedly and improperly referred to the fact Dr. Gleason examined the plaintiffs pursuant to court order. Defendant first complains of statements made by plaintiffs' counsel during opening argument which indicated that Dr. Gleason examined both John Branch and Beverly Wheeler pursuant to a court order obtained at the request of defendant Seiler. At the close of plaintiffs' opening argument, defense counsel moved for a mistrial based upon the above comments. In chambers, the trial court noted that counsel's comments as to how Dr. Gleason was brought into the case were "quite inappropriate" and that it was early enough in the proceeding so that no real harm would be done by discharging the present jury and selecting a new one. Defense counsel then withdrew his motion for a mistrial.

Defendant next complains of the following questions asked Beverly Wheeler during direct examination: "Now, in addition to Dr. Robbins, were you, by court order, examined by another doctor, Dr. Gleason?" Defense counsel interposed no objection and Beverly Wheeler responded in the affirmative. Defendant further complains of a question asked Dr. Gleason during direct examination. After it was established on direct examination that Dr. Gleason had examined both plaintiffs and prepared reports based on such examinations, plaintiffs' counsel asked Dr. Gleason where he sent these reports. Defense counsel objected and the trial court sustained the objection.

■■ We agree with the trial court's impression that the above references to the fact that Dr. Gleason examined the plaintiffs pursuant to a court order obtained by the defendant were "quite inappropriate." Supreme Court Rule 215(d)(1) (Ill. Rev. Stat. 1975, ch. 110A, par. 215(d)(1)) provides:

> "A reasonable time in advance of the trial, the court may on its own motion, or that of any party order an impartial physical or mental examination of a party whose mental or physical condition is in issue, when in the court's discretion it appears that such an

examination will materially aid in the just determination of the case. The examination shall be made by a member or members of a panel of physicians chosen for their special qualifications by the Illinois State Medical Society."

In *Wong v. Richards* (1973), 10 Ill. App. 3d 514, 294 N.E.2d 784, the plaintiff submitted to an examination by an impartial medical witness pursuant to the above provisions of Supreme Court Rule 215. Plaintiff requested the court to permit him to indicate to the jury that the expert witness was testifying as an impartial medical expert and not as a treating physician. The trial court denied this request and on appeal, plaintiff urged that the trial court's ruling prejudiced her case and that such prejudice was reflected in the award made by the jury. Noting that Rule 215 was primarily designed to aid in pretrial settlement and to provide an impartial diagnosis and prognosis of injuries, this court on appeal held that the trial court ruled correctly in excluding the origin of the impartial medical examiner. For the same reasons cited in *Wong*, we agree with the trial court's impression that references to Dr. Gleason's examination as pursuant to court order obtained by defendant are "quite inappropriate." However, after reviewing the testimony we conclude that these references did not prejudice the jury and do not rise to the level of reversible error.

■■ The instant record denotes that four physicians Drs. Rabin, Robbins, Jordan and Gleason, were called to testify concerning plaintiffs' injuries and that all of these witnesses were called by the plaintiff. Our review of the record shows that Dr. Gleason's testimony was substantially the same as that of the other medical witnesses. Defendant makes no contention to the contrary anywhere in his brief. Under such circumstances, we fail to see the prejudice created by references to the fact that Dr. Gleason examined plaintiffs pursuant to a court order obtained by defendant. Furthermore, even had Dr. Gleason's testimony differed substantially from that of the other medical witnesses and been given undue significance by the jury, we do not believe such facts would require reversal. Defendant moved for a mistrial after counsel's comments during open argument concerning the fact that Dr. Gleason's examination was pursuant to court order obtained by defendant. However, defendant withdrew the motion. Furthermore, the defense failed to object to the second reference that Dr. Gleason examined the plaintiffs pursuant to court order. Under these circumstances, defendant has waived the right to object to the first two references. The last comment concerning to whom Dr. Gleason sent his reports was never answered and at the most indirectly reflected that his examinations were pursuant to court order or at the request of plaintiffs. Any prejudice

created by the question was minimal and such minimal prejudice was cured when the trial court sustained an objection thereto.

■■ We also note that a further reference was made during trial that Dr. Gleason examined plaintiffs pursuant to a court order. Defense counsel argued as follows: "[Dr. Gleason] testified that he examined these people, examined them under court order * * *." Defense counsel then emphasized a portion of Dr. Gleason's testimony favorable to his case. Having indicated himself that Dr. Gleason was appointed by court order, defense counsel should not now be heard to complain about like conduct on the part of plaintiffs' counsel.

We find no reversible error and for the foregoing reasons affirm the judgments of the trial court.

Judgments affirmed.

GOLDBERG, P. J., and O'CONNOR, J., concur.