JOSEPHINE S. HEHIR, Plaintiff-Appellant, *v.* JEAN BOWERS, Defendant-Appellee.

Second District No. 79-471

Opinion filed June 27, 1980.

Bernard P. Reese, Jr., of Reese & Reese, of Rockford, for appellant.

Bruce C. Erickson, of Mateer & Erickson, of Rockford, for appellee.

Mr. JUSTICE LINDBERG delivered the opinion of the court:

Plaintiff, Josephine Hehir, appeals from a judgment of the Circuit Court of Winnebago County entered on a jury verdict awarding her $22,500 in her personal injury action against defendant, Jean Bowers. Plaintiff's principal contention on appeal is that the jury's damage award was inadequate.

On December 8, 1975, the plaintiff, who was walking to church, was struck by defendant who was operating a motor vehicle. Plaintiff was subsequently hospitalized for 10 days and treated for a fractured right tibia (bone below the knee) and inflammation of the right shoulder. After her hospital stay she remained in a cast for 6 to 8 weeks.

Prior to the accident, plaintiff, who was aged 57, worked as a cashier in a grocery store. Part of her job was to stock shelves. She was generally in good health, had a good work record, played tennis and bowled, and helped care for her semi-invalid husband. While in the hospital following her injury, plaintiff was found to be suffering from diabetes and was required to take oral medication. Three physician witnesses, Drs. Osadjan, Vidoloff, and Behmer, testified that the diabetic condition could have been triggered by the trauma. However, Dr. Osadjan testified that in his opinion the trauma did not cause the diabetes. Similarly, a fourth physician, Dr. Leonard, testified that traumatically induced diabetes could not be controlled by oral medication.

In November of 1978, plaintiff's right knee buckled and she fell, causing injury to her shoulder. Dr. Vidoloff testified that buckling of the leg was consistent with his findings that the muscles of plaintiff's right leg had deteriorated from December 1978 to April 1979. Dr. Suma, a treating physician, testified that there was a causal relationship between the knee giving way and the original injury. However, Dr. Leonard found the grating condition of plaintiff's left knee, which had not been injured, to exist to the same degree as that in the right knee. Also, Dr. Suma testified

that while he had been treating the plaintiff during 1977 and 1978, he had no specific information on possible buckling of the knee.

This case went to trial in April of 1979. At the close of all evidence, the court directed a verdict in favor of plaintiff and the jury was instructed that their only determination was to be the amount of damages. The jury returned a verdict in the amount of $22,500. Plaintiff appeals.

Five issues are presented by this appeal: (1) whether the jury's award of $22,500 was inadequate, (2) whether the jury was guilty of misconduct or prejudice, (3) whether the denial of plaintiff's demonstration of range of motion of the right shoulder was an abuse of discretion, (4) whether certain questions, conduct, and comments of defense counsel were improper, and (5) whether it was error to fail to give plaintiff's tendered instruction on circumstantial evidence.

## I.

■■ As a general rule, the amount of damages lies within the province of the jury. A reviewing court will not overturn a jury's determination of damages unless the amount awarded is palpably inadequate or unless it is clear that the jury disregarded a proven element of damages. (*Robin v. Miller* (1978), 67 Ill. App. 3d 656, 661, 384 N.E.2d 889, 893.) In the instant case there was conflicting testimony concerning whether the initial trauma was the proximate cause of plaintiff's diabetes or of her fall in November of 1978. We have reviewed this testimony and conclude that a jury could reasonably have found that these latter conditions were not the responsibility of the defendant. While the parties are unable to agree on a figure for special damages, somewhere between $10,000 and $14,000 in medical expenses and lost wages are directly attributable to the initial injury. In light of this figure and the conflicting testimony concerning the causes of diabetes and the subsequent fall, we cannot say that the damages awarded are so inadequate that a new trial must be awarded. See *Potter v. Rodrick* (1979), 77 Ill. App. 3d 7, 395 N.E.2d 746.

## II.

Plaintiff next maintains that the jury was guilty of misconduct or prejudice. The record does contain sworn statements by jurors that at least one juror believed in faith healing and therefore felt that little or no money compensation was needed. However, these statements and counsel's supporting affidavit were not filed until June 6, 1979 (almost two months after judgment) as part of plaintiff's third post-trial motion. We have serious questions about the propriety of a party making successive post-trial motions. (See *Drafz v. Parke, Davis & Co.* (1980), 80 Ill. App. 3d 540, 541, 400 N.E.2d 515, 516.) We need not reach this procedural

question as we conclude that the sworn statements were an improper attempt to impeach the jury's verdict.

▪▪ ▪ In *People v. Holmes* (1978), 69 Ill. 2d 507, 511-12, 372 N.E.2d 656, 658, our supreme court abandoned the absolute rule against impeaching jury verdicts instead drawing a distinction between those cases where juror testimony is used to prove the "motive, method or process by which the jury reached its verdict" and cases where it is used "as proof of conditions or events brought to the attention of the jury without any attempt to show its effect on the juror's deliberations or mental processes." Under *Holmes* the use of juror testimony is only proper under the latter circumstances. (See also *People v. Holmes—Juror Statements are Admissible to Show That Extraneous Information Reached the Jury*, 1979 U. Ill. L. F. 477.) In the instant case, the allegation that a juror expressed a belief in faith healing is not concerned with a tangible outside influence on the jury, and thus plaintiff should not be allowed to impeach the jury's verdict. See Annot., 32 A.L.R. 3d 1356 (1970), and Federal Rule of Evidence 606(b).

▪▪ Plaintiff also argues that the juror in question lied during *voir dire* and that this is grounds for a new trial. (See *People v. Oliver* (1977), 50 Ill. App. 3d 665, 365 N.E.2d 618.) However, it is impossible to determine if this juror lied during *voir dire* as the *voir dire* was not transcribed and we have not been provided with any substitute for a report of proceedings. Thus plaintiff has waived this latter claim of error. *Reed v. Hoffman* (1977), 48 Ill. App. 3d 815, 819, 363 N.E.2d 140, 144.

### III.

▪▪ Plaintiff's third argument is that the trial court erred when it denied her the opportunity to demonstrate for the jury the range of motion in her injured right shoulder. On direct examination Dr. Leonard was permitted to demonstrate what plaintiff did with her arm when he examined her. On cross-examination, plaintiff's counsel sought to have the doctor let the plaintiff show her version of what had happened. This request was denied. The allowance of such demonstrations by an injured party is generally frowned upon and at any rate is left to the discretion of the trial court. (*Ruspantini v. Steffek* (1953), 350 Ill. App. 319, 113 N.E.2d 74 (abstract).) Moreover, the record clearly indicates that plaintiff, upon earlier questioning by defendant's counsel, demonstrated by use of her uninjured left arm the range of motion of her injured right shoulder. Thus plaintiff was in no way prejudiced by the ruling of which she complains.

### IV.

▪▪▪ Plaintiff also asserts that certain conduct and comments of defendant's counsel deprived her of a fair trial. During closing argument,

defendant's counsel made a comment to the effect that if the jury was unsure of a proposition, the plaintiff had failed to meet its burden of proof. In our view this is not the type of statement of law that warrants reversal of a jury verdict. (*Migliore v. County of Winnebago* (1974), 24 Ill. App. 3d 799, 321 N.E.2d 476.) Similarly, plaintiff argues that opposing counsel acted improperly by making reference to the fact that the defendant was also a party to the suit and that she would be responsible for the money damages. This isolated comment only states the obvious and does not naturally raise the implication that defendant was uninsured. Also during closing argument, defendant's counsel referred back to a deposition used to impeach a witness during trial. Plaintiff argues that the transcripts read from were not properly authenticated. However, plaintiff did not object at the time. Moreover, the deposition in question had been properly authenticated earlier at trial. Again, we find no reversible error.

During the questioning of Dr. Leonard, defendant's counsel asked how he happened to examine the plaintiff. The doctor responded that his examination was pursuant to court order. Supreme Court Rule 215(d) (Ill. Rev. Stat. 1977, ch. 110A, par. 215(d)) provides a procedure whereby a trial court may order an impartial expert to examine a party whose physical or mental condition is in issue. Cases interpreting this provision have held that it is improper to inform the jury that an examination was pursuant to court order. (See *Wong v. Richards* (1973), 10 Ill. App. 3d 514, 294 N.E.2d 784, and *Branch v. Seiler* (1977), 54 Ill. App. 3d 693, 370 N.E.2d 873.) It is clear from the record, however, that the examination by Dr. Leonard was not pursuant to Rule 215(d), but was under Rule 215(a). This latter subsection provides for a court-ordered examination by a physician chosen and paid by the moving party. (Ill. Rev. Stat. 1977, ch. 110A, par. 215(a).) We have been unable to locate any cases under Rule 215(a) concerning informing the jury of the court order. However we believe that it was clearly improper for defense counsel to attempt to create the false impression that Dr. Leonard was an impartial expert selected by the court.

■■ The question remains as to whether or not the complained of reference was of such a magnitude as to amount to reversible error. (*Branch v. Seiler*.) On cross-examination plaintiff's counsel questioned Dr. Leonard concerning the court order. While some of the doctor's responses can be categorized as evasive, it was brought out that the witness was paid by the defendant. Thus the potential biases of this witness were properly brought out, and we find any error to be harmless.

## V.

■■ Finally, plaintiff contends that the trial court erred by failing to give

her tendered instruction on circumstantial evidence. Plaintiff merely raises this instructional issue without any discussion. Similarly, no instructional error was raised in plaintiff's post-trial motion. In short, plaintiff has failed to preserve the alleged error for review. *People v. Brady* (1974), 23 Ill. App. 3d 330, 318 N.E.2d 642; *Hubbard v. Logsdon* (1978), 56 Ill. App. 3d 366, 372 N.E.2d 101.

For the foregoing reasons the judgment of the Circuit Court of Winnebago County is affirmed.

Affirmed.

SEIDENFELD, P. J., and VAN DEUSEN, J., concur.